Luis DOMINGUEZ, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.

Civ. No. 80–1720 (PG).

United States District Court, D. Puerto Rico.

June 11, 1981.

José R. Otero, Hato Rey, P. R., for plaintiff.

Gustavo A. Gelpí, Feldstein, Gelpí, Hernández & Castillo, San Juan, P. R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

The present case is submitted on the basis of stipulation of facts, documents, the translated transcript of plaintiff's deposition, and legal memoranda. Plaintiff filed a motion submitting his case on the basis of the brief filed by Manuel de Jesús, defendant in Civil Case No. 80–0074.

Only procedural and slightly factual differences exist between the present case and the *Federal Deposit Insurance Corporation v. Manuel de Jesús Vélez*, 514 F.Supp. 829. Plaintiff, Luis Domínguez, commenced this action for declaratory judgment in the Superior Court of Puerto Rico on July 24, 1979, and defendant filed a petition for removal to this Court, pursuant to 28 U.S.C. § 1446, which was granted. Subsequently, the Federal Deposit Insurance Corporation [1] in its corporate capacity, filed its answer and counterclaim against plaintiff. In both cases the FDIC is trying to collect on promissory notes in the principal amount of $25,000 which it acquired from the FDIC as Receiver of Banco de Ahorro de Puerto Rico

---

1. Hereinafter referred to as FDIC when referring to its corporate capacity, and as Receiver when referring to its capacity as receiver of a bank.

(hereinafter referred to as the Bank), pursuant to the provisions of the Federal Deposit Insurance Act, particularly 12 U.S.C. § 1823(e).

Both Messrs. Luis Domínguez and Manuel de Jesús Vélez alleged the existence of an agreement to the effect that the notes would not be collected until redemption by the Bank of $25,000 in debentures owned by each one of them which had been pledged as collateral security for the loans, and in both cases the FDIC, in its corporate capacity, attacked the validity and enforceability of the alleged agreements.

One of the principal issues presented in *FDIC v. Manuel de Jesús Vélez*, which is the only issue presented in the case herein, concerns the validity and enforceability of the alleged agreement.

From the evidence submitted by the parties we make the following findings:

Banco de Ahorro de Puerto Rico, a banking institution organized under the provisions of the Savings Bank Act of Puerto Rico, 7 L.P.R.A. 1001–1046, had insured its deposits with the FDIC in accordance with the Federal Deposit Insurance Act, 12 U.S.C. § 1811, et seq. The Bank was closed on September 5, 1978, after the Secretary of the Treasury determined that it was insolvent. The FDIC was tendered appointment as receiver of the Bank under 7 L.P.R.A. 1031(a), and the FDIC accepted said appointment, pursuant to 12 U.S.C. § 1821(e). Said appointment provided for the purchase of some of the assets and assumptions of deposit liabilities by another bank. The assets not accepted by the assuming bank can be bought by the FDIC in its corporate capacity. As Receiver, the FDIC entered into transactions with the FDIC in its corporate capacity, as authorized by the Secretary of the Treasury of the Commonwealth of Puerto Rico and approved by the order of the Superior Court of Puerto Rico, dated September 5, 1978. Plaintiff's note was among the assets purchased by the FDIC from the Receiver of the Bank.

Plaintiff, a member of the Board of Directors of the Bank from the year 1967 until his resignation in April 26, 1976, was the owner of twenty five debentures issued by the Bank, with a face value of $1,000 each, which were due and payable on April 15, 1976. The minutes of the April 26, 1976, meeting of the Board of Directors reflect the discussion of the Bank's precarious condition and the Secretary of the Treasury's suggestion that redemption of the debentures be postponed until April 15, 1981. A letter dated June 24, 1976, signed by the President of the Bank, Héctor Ceinós, on which plaintiff relies, provided that the loan would not be called for payment until redemption of plaintiff's debentures, the maturity of which had been extended to April 15, 1981, and further provided that the debentures were pledged as collateral security for the loan, and that in spite of a 7½% interest on the loan, plaintiff would only be liable for payment of interest to the extent of interest paid by the Bank on the debentures, at 6%. The alleged agreement was never discussed, approved or ratified by the Board of Directors or the Bank's loan committee. Nor did it ever form part of the Bank's official records.

On June 24, 1976, the Bank issued two checks in the sum of $22,500 and $2,500, and plaintiff delivered the debentures to the Bank as collateral security for the loan. Plaintiff did not pay interest on his obligation except for certain sums deducted by the Bank from his savings account. Banco de Ahorro paid interest on the debentures until April 1978.

The promissory note provided for payment on June 24, 1977. Since the FDIC considered the debentures securing the obligation to be of no value, it decided to enforce collection of the loan.

The loan arrangements involved in this case and in *FDIC v. Manuel de Jesús Vélez* pursued the same purpose even though the transactions involved were slightly different. Therefore, we are in accord with Judge Gierbolini's conclusion in *FDIC v. Manuel de Jesús Vélez* that the arrangement and agreement, evidenced in this case by the letter of June 24, 1976, "was a subterfuge to circumvent legal and contractual

impediments to redemption of the debentures. 7 L.P.R.A. 1017(b) and 12 U.S.C. 1828(i)(1)."

The Court makes the following conclusions of law:

Legal and contractual limitations precluded payment of the debentures or even their acceptance as security. The Savings Bank Act and the Federal Deposit Insurance Act expressly prohibit the retirement of capital debentures without the prior consent of the FDIC or their acceptance as security.

7 L.P.R.A. 1017(a): "Capital debentures cannot be acquired by the bank nor accepted as security of any kind."

12 U.S.C. § 1828(i)(1): "No insured state nonmember bank (except a District Bank) shall, without the prior consent of the corporation, reduce the amount or retire any part of its common or preferred stock, or retire any part of its capital notes or debentures."

■ These prohibitions were incorporated into the debenture certificate, plus the debentures further provided for the subordination of payment in the event of insolvency to the prior payment of the Bank's depositors and general creditors. Under the laws of Puerto Rico, 31 L.P.R.A. 3372, and as a matter of federal policy, the alleged agreement which had for its objective the prepayment of plaintiff's debentures may not contravene law, morals or public order. As such, the agreement was void *ab initio*. See 31 L.P.R.A., Sections 4 and 3432; *Serra v. Salisian Society*, 84 PRR 322 (1960), and neither the President of the Bank nor the Board of Directors had any authority to approve or ratify said agreement.

■ Besides the agreement being unenforceable because of an unlawful purpose, there exists a federal policy of protecting the FDIC from agreements which tend to diminish or defeat the right, title or interest of the Corporation in any assets acquired by it. See 12 U.S.C. § 1823(e) and *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Dietrick v.*

*Greany*, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694 (1940).

■ Plaintiff alleged a set-off of the debentures against the note, but this was not possible since the obligations are not mutually extinguishable. Even if the debentures were due the same date as the note, there is no mutuality since the note is payable to the FDIC in its corporate capacity, whereas the debentures are payable by the Receiver of the Bank. Whatever claim plaintiff could assert against the Bank is enforceable only against its Receiver. *FDIC v. Vogel*, 437 F.Supp. 660, 665 (E.D.Wis., 1977). Compensation or set-off cannot take place either under the law of Puerto Rico, 31 L.P.R.A. 3221, 3222; *García Méndez v. Vázquez Bruno*, 440 F.Supp. 985 (D.C.P.R., 1977), or under federal law. *FDIC v. Smith*, 466 F.Supp. 843, 845 (N.D.Ga., 1979); *FDIC v. James T. Barry Co.*, 453 F.Supp. 81, 83 (E.D.Wis., 1978).

Finally, plaintiff claims to an absolute right to redemption of the debentures.

When the Bank was closed by the Secretary of the Treasury, the FDIC, as Receiver, utilized what is known as a "purchase and assumption transaction", which is authorized by 12 U.S.C. § 1823(e). Under this transaction, assets not purchased by the assuming bank, Banco Comercial de Mayaguez, were sold by the Receiver to the FDIC. The price of the assets purchased by the FDIC from the Receiver was the amount necessary to make up the difference between the value of the assets purchased and the liabilities assumed by Banco Comercial, the latter being greater than the former. According to the agreement of sale between the Receiver and the FDIC, the latter proceeds to liquidate the assets purchased by it and reimburses itself for the cash purchase price, plus all expenses of liquidation. The Receiver retains a remaining interest in any assets left and would then make a *pro rata* distribution to subordinate debenture holders of record, and in the event that sufficient assets remain after satisfying such debenture holders in full, distribution would be made to common stockholders.

■ In the case of a purchase and assumption transaction under 12 U.S.C. § 1823(e) the Court finds that the express language and intent of both the debentures and the agreements entered into by the FDIC, the Receiver and the assuming bank, as well as the federal policy being carried out by the FDIC under the Act, *D'Oench, Duhme & Co. v. FDIC, supra,* manifest the intent of the parties that plaintiff's rights under the debentures be subordinated to those of the FDIC. Plaintiff may not improve his status to that of a depositor or creditor by means of the agreement with the President of the Bank, which in effect rescinds his prior agreement to accept a subordinated position in the event of insolvency. *In the matter of Weis Securities,* 425 F.Supp. 212 (S.D.N.Y., 1977), affirmed 605 F.2d 590 (2 Cir., 1978).

WHEREFORE, in view of the foregoing, the Court ORDERS that defendant's counterclaim for the principal amount of the note, together with accrued interest as provided in the note and for liquidated collection expenses, be and is hereby GRANTED; and FURTHER ORDERS that the complaint be DISMISSED.

The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.